UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 3:15CR _GI_   (_AVC_) |
| v. | VIOLATIONS: |
| BONNEY J. HEBERT | 18 U.S.C. Section 1343 (Wire Fraud)<br>18 U.S.C. Section 1957 (Illegal Monetary<br>Transactions) |

INFORMATION

The United States Attorney charges:

General Allegations

At all times relevant to this Information:

1.      The defendant, BONNEY J. HEBERT, was the sole owner and president of Academic Risk Resources and Insurance, LLC ("ARRI"), a risk management and insurance brokerage agency in Boston, Massachusetts.

2.      Aetna Life Insurance Company ("Aetna") was a life and health insurance provider based in Hartford, Connecticut.

3.      Aetna Student Health Agency, Inc. ("ASH") was the student health insurance division of Aetna.

4.      Rutgers, the State University of New Jersey ("Rutgers") was the State of New Jersey's flagship public university.

5.      ARRI's business included brokering insurance contracts between health insurance providers, such as Aetna, and colleges or universities, such as Rutgers, in order to provide health insurance for students and other individuals affiliated with the contracting college or university.

1

6.     On or about July 1, 2007, before the start of the 2007-2008 academic year, HEBERT and ARRI began serving as the broker for a student health insurance contract entered into between Aetna and Rutgers.   The contract between Aetna and Rutgers provided that premiums would be paid by Rutgers to ARRI and then transmitted by ARRI to Aetna.

COUNT ONE
(Wire Fraud)

7.     Paragraphs 1 through 6 of this Information are realleged and incorporated by reference as though fully set forth herein.

8.     In or about the 2009-2010 academic year, HEBERT and ARRI experienced significant financial problems.

9.     From on or about September 1, 2009, and continuing through on or about June 26, 2012, HEBERT knowingly and intentionally devised, and participated in, a scheme and artifice to defraud Aetna out of money, and to obtain money by means of materially false and fraudulent pretenses, representations, promises, and omissions, by withholding millions of dollars of insurance premiums paid by Rutgers and supposedly held for Aetna by HEBERT and ARRI, and instead misappropriating and converting the premiums for HEBERT's own benefit and the benefit of ARRI, without Aetna's knowledge or authorization.

10.     It was part of the scheme and artifice to defraud that, on or about February 8, 2010, HEBERT signed and submitted to Aetna a brokerage application providing that premiums received on Aetna's behalf would not be commingled with HEBERT's personal or other business funds and would be promptly remitted to Aetna.   Although the application appears never to have been formally countersigned and implemented by Aetna, the parties understood that the defendant would not commingle funds and would promptly remit premiums to Aetna.

2

11.     In signing the brokerage application, HEBERT misrepresented her intention to abide by its terms, whereas she had no such intention and in fact already had misappropriated and converted premiums meant for Aetna.

12.     In all, HEBERT diverted for her own use and the use of ARRI $10,358,728 in Rutgers premiums meant for Aetna, as follows:

| Academic Year | 2009/2010 | 2010/2011 | 2011/2012 |
|---|---|---|---|
| Total Premium Charged | $8,644,172 | $12,664,992 | $647,000 |
| Diverted Premium | $1,086,623 | $8,625,105 | $647,000 |

13.     On or about February 8, 2010, in furtherance of the scheme and artifice to defraud, HEBERT knowingly caused to be transmitted in interstate commerce by means of wire communications certain signs, signals, and sounds, that is, HEBERT, while in Massachusetts, sent an e-mail with the signed brokerage application to ASH representatives via Aetna's computer servers, which are located in Connecticut.

All in violation of Title 18, United States Code, Section 1343.

COUNT TWO
(Illegal Monetary Transactions)

14.     Paragraphs 1 through 13 of this Information are realleged and incorporated by reference as though fully set forth herein.

15.     People's United Bank ("People's Bank") was a financial institution based in Bridgeport, Connecticut, and insured by the Federal Deposit Insurance Corporation.

16.     Bank of America, N.A. ("Bank of America") was a financial institution based in Charlotte, North Carolina, and insured by the Federal Deposit Insurance Corporation.

17.     It was a material part of HEBERT's scheme and artifice to defraud to commingle the premiums received from Rutgers with other funds in ARRI's operating account at People's Bank, and then either use the commingled funds to cover ARRI's business expenses and losses,

3

or transfer a portion of them to her personal Bank of America account.

18.     On or about November 7, 2011, HEBERT knowingly engaged in a monetary transaction in criminally-derived property of a value greater than $10,000, involving financial institutions that are engaged in, and the activities of which affect, interstate commerce, such property having been derived from specified unlawful activity, that is wire fraud in violation of Title 18, United States Code, Section 1343, by wiring $50,000 that included more than $10,000 in diverted Rutgers premiums from ARRI's operating account at People's Bank to HEBERT's personal Bank of America account.

All in violation of Title 18, United States Code, Section 1957.


UNITED STATES OF AMERICA


DEIRDRE M. DALY
UNITED STATES ATTORNEY


AVI M. PERRY
ASSISTANT UNITED STATES ATTORNEY